[No. 6588.]

## Reitze et al. v. Humphreys.

1. Equity—*Maxims*—Equity has to do with the substance and reality of the transactions of men, not regarding the forms and appearances which they may assume.

2. ——*Complete Justice*—A court of equity having obtained jurisdiction of a cause for any purpose, will retain it until complete justice is accomplished.

3. ——*Jurisdiction—Pleading*—Where one holding title to lands by deed absolute, which is in fact only a mortgage, sues at law to recover possession of the premises from the mortgagor, the defendant in such action may have a bill in equity to establish his right, and the true relation of the parties.

And it is not required that he should offer to pay the indebtedness, or aver such offer.

4. EVIDENCE—*Parol Admissible*, to show that a conveyance absolute on its face is in fact a mortgage.

5. CONTRACTS—*Construed—Deed or Mortgage*—Plaintiff's homestead having been sold under a third mortgage thereof, and the period of redemption being about to expire, she applied to defendant for assistance, and defendant agreed to advance the sum of $2,400, for the period of ninety days, to satisfy the purchaser at the mortgage sale, which had already been had, as well as the second mortgage, and the further sum of $1,000 to be applied on the first mortgage in order to secure an extension thereof—the loan to be secured upon the property, and the details of the transaction being left to plaintiff's attorney. Defendant made the advance accordingly, and under the advice of the attorney, the certificate of purchase issued upon the mortgage sale was assigned to defendant, a deed taken thereupon from the sheriff, the second mortgage was released, plaintiff executed a quit-claim deed to defendant, and the defendant executed to plaintiff a lease for three months, with an option to purchase the property, at the end of that period, for the amount of defendant's advances, with the agreed interest. *Held*, that the transaction, from plaintiff's application for the loan to the execution of the last paper, was a single transaction, and indisputably a mortgage; that plaintiff was entitled to retain possession of the premises until foreclosure and sale of the property had, and a deed executed, upon such foreclosure.

*Appeal from Denver District Court.*—Hon. CARLTON M. BLISS, Judge.

Mr. F. T. JOHNSON, Mr. S. W. JOHNSON, for appellants.

Mr. EDWARD L. SHANNON, for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the court:

The only evidence given at the trial in the court below was that on behalf of the plaintiffs, who are appellants here. From this it appears that Mrs. Reitze was the owner of certain real property in Denver, which she, with her husband, the other appellant, had occupied as a home from the time she acquired it to the time of the rendition of the judgment in the district court. There were three mortgages upon the premises. The third one had been foreclosed, the six months al-

lowed by statute for redemption by the owner had expired, and it was upon the last day, or the day before the last, for the redemption by creditors, when the transaction, out of which this action arose, had its inception. On that day, Mr. Reitze, who had full authority from his wife, called upon Mr. Humphreys and informed him that they would lose their home unless they obtained assistance and requested a loan of $2,500.00, which Mr. Reitze thought would be sufficient to satisfy the holder of the certificate of the foreclosure sale, who was willing to surrender it if paid, and to pay the second mortgage and all interest, taxes and other liens, except a first mortgage of $4,000.00, which the holder had said he would extend for a period of about eighteen months. Mr. Humphreys agreed to loan the money for ninety days, and Mr. Reitze agreed to pay $100.00 for the use of it for that period, and that this interest should de deducted from the $2,500.00, leaving $2,400.00 for Mr. Reitze. The loan was to be secured by the home. Mr. Humphreys drew his check for $2,400.00 and informed Mr. Reitze that they would go over to the office of Mr. Humphreys' attorney, who would attend to the matter. There, Mr. Reitze informed the attorney of the agreement which had been made for the loan of $2,500.00, and that, out of this, every lien and incumberance was to be paid, except the first mortgage. Mr. Humphreys assented to this, handed the check for $2,400.00 to his attorney, and told the latter to attend to the matter for him. On the same day, or the next day, Mr. Reitze called upon the holder of the first mortgage, and the latter refused to extend it unless $1,000.00 was paid on the principal. Mr. Reitze informed Mr. Humphreys of this, and the latter agreed to loan $1,000.00 more, on the same conditions, for the use of which Mr. Reitze agreed to pay $25.00 in addition to the $100.00 that had been agreed upon before. Mr. Humphreys declared he did not want to buy the property. Again they went to the attorney, who was informed of the increase in the loan and was told to attend to it for Mr. Humphreys, and the latter insisted that the attorney should be paid

by Mr. Reitze. Here was a plain and simple contract made for the loan of $3,400.00 for ninety days, for the use of which the borrower agreed to pay $125.00, and to secure the same by the premises subject to a mortgage of $3,000.00, and the attorney was to attend to the matter for the lender. With this money the certificate of sale was obtained, the second mortgage paid off, the interest due on the first mortgage and $1,000.00 of the principal thereof, and taxes on the premises were paid, together with small expenses incurred in recording papers, and $25.00 to the attorney, all of which amounted to $3,400.00. In paying out this money, except a small amount for taxes, Mr. Reitze and the attorney called upon the parties together, and the attorney would pay the necessary amounts. There can be no dispute about all this, for the evidence is one way and uncontradicted and no other construction can be given it. The money thus loaned became the money of the borrowers, who were to repay it within ninety days, together with $125.00 interest. After Mr. Humphreys had taken Mr. Reitze to the attorney, Mr. Reitze informed the attorney of the condition of the property. He also informed him that there was a judgment against himself and Mrs. Reitze, which would be a lien on any property in Mrs. Reitze's name, but which they expected soon to pay off. Under the advice and insistence of Mr. Humphreys' attorney, for the protection of his client, the papers were disposed of and executed in this wise: The certificate of sale was assigned to Mr. Humphreys and a sheriff's deed taken thereon to him. The note secured by the second mortgage was assigned to Mr. Humphreys and later cancelled and the mortgage released. Mrs. Reitze executed a quit-claim deed to Mr. Humphreys, and a lease and option was executed by the Reitzes and Humphreys for the term of three months, for a rental of $125.00, and they were given the option to purchase the property within the term of the lease for $3,525.00, and any of the rent paid was to apply on the purchase price.

It must be borne in mind that at the time Humphreys and Reitze arranged for the loan, they did not agree upon the security more than in a general way—that it was to be upon the home, subject to the first mortgage, and the details were to be worked out by Mr. Humphreys' attorney. The attorney explained and insisted to Reitze that the manner adopted was the best way under all the circumstances to arrange the matter so that Mr. Humphreys would be protected and the Reitzes desired to protect him. No reflections are to be cast upon Mr. Humphreys or his attorney in this matter, or any ulterior motive ascribed to them. The attorney no doubt intended to adopt a method to secure his client, which to him honestly appeared to be the best for all concerned under the circumstances. There seems to have been an honest misconception of the nature of the transaction as detailed above. The defendant was content to rest his case upon the undisputed evidence offered on behalf of plaintiff, and the only question is, what is the legal effect of what was done, taking in view the whole transaction from beginning to end?

The lower court held that when the transaction was completed Mr. Humphreys was the owner of the property and that the only interest that the plaintiffs had in it was a lease for three months and the option to purchase it during that time for $3,525.00. The court adjudged that Mr. Humphreys was the owner and entitled to the possession of the premises and ordered the Reitzes to surrender possession. The plaintiffs are now here insisting that the lower court was wrong in its conclusion, and that the only interest that Mr. Humphreys had in the property was as security for the loan made by him. Some time after the expiration of the three months, the Reitzes, not having paid the loan, Mr. Humphreys began an action of unlawful detainer in a justice court to oust the plaintiffs from possession of the premises, claiming to be the owner of the property and entitled to its possession. On the trial of that case, the justice refused to hear and determine the matter of the loan and security hereinbefore stated, and which was

alleged in the answer in the justice court, and the justice rendered judgment against the Reitzes for rent and possession of the premises, from which judgment the Reitzes appealed to the county court and that appeal was pending at the time of the action in the district court.

Voluminous briefs have been submitted by both parties to this action, in which a mass of authorities are cited and quoted. The case, however, is a very simple one, the evidence clear and undisputed, and the application of the first general principles of equity relating to such matters is all that is needed. All that was done from the time that Mr. Reitze approached Mr. Humphreys for the loan, to be secured by the home, down to the execution and delivery of the papers, constituted but one transaction. That a loan was agreed upon at the very first, together with the time it was to run, the interest to be paid, and by what it was to be secured is undisputed and beyond the shadow of a doubt on this record. This initial step stamped the transaction with the character of a debt and security, and this character remained with it until the final completion of the transaction, no matter what the form in which it may have been made to appear at the close. Equity has to do with the substance and reality of a transaction—not the form and appearance which it may be made to assume. The case of *Blackstock v. Robertson,* 42 Colo. 472, conclusively shows that it is the real intention of the parties, and the true nature of the transaction that concern equity, and if the true nature is that of security the transaction will be given that effect no matter how many papers may have been executed that cover up the real purpose, and give to the transaction an appearance other than the true one. As our court of appeals has said, quoting from Story, "If a transaction resolve itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is in effect a mortgage."—*Borcherdt v. Favor,* 16 Colo. App. 406. In *Wilson v. McWilliams,* 91 N. W. 453 (S. D.), the lender, at about the expiration of the time for redemption from a foreclosure

sale paid the amount necessary to redeem the property and some back taxes. He took the sheriff's certificate of sale and later a deed to himself. He agreed orally to sell the property to the plaintiff at any time within one year for the amount advanced on the property and interest. A written lease was also executed to the plaintiff. There, the initial fact necessary to make the transaction one of security—that is, whether the money necessary to redeem was advanced as a loan—was disputed. The plaintiff claimed that it was so advanced, while the defendant claimed that he took a deed to the property for the purpose of acquiring title thereto. After a review of the conflicting evidence, the court found that the money was advanced as a loan; that thereby the relation of debtor and creditor was created between the parties, and that therefore, the true nature of the transaction was one of security, and the defendant was held to be a mortgagee and not the owner of the premises. The authorities generally hold that in such transactions, when the papers are silent as to the existence of a debt to be secured, and on their face purport otherwise, parol evidence may be resorted to to show the intent of the parties and the true nature of the transaction, and if it appears that there was a loan and a debt resulting therefrom a transaction like the one in this case is declared to be a mortgage to secure that debt.—*Gassert v. Bogk,* 7 Mont. 585; *Heron v. Weston,* 44 Colo. 379.

The defendant says that the Reitzes had no interest in the property; that their time for redemption had expired and they had nothing to mortgage. He took from them a quit-claim deed and he must have thought that they had some interest which they could convey by it. It is undisputed on this record that at the time the negotiations began with Mr. Humphreys they had an arrangement with the holder of the certificates of sale, whereby the holder would assign it to them for the amount it would take to redeem. In any event, it was the money of the Reitzes, borrowed from Humphreys, that obtained whatever right he had in the property. With this

money the second and third mortgages were disposed if, the principal of the first mortgage reduced and the taxes paid, all of which were valid liens on the property, and it was the interest in the property covered by these liens which was to secure Mr. Humphreys for the money. What was done, as between the Reitzes and Mr. Humphreys, was in legal effect the same as though the certificate had been assigned to Mrs. Reitze and she had taken the sheriff's deed and then conveyed the property to Mr. Humphreys for the purpose of security. When a grantee obtains title to property with money loaned to parties related to the property, as the Reitzes were in this case, there can be no doubt that the transaction is a mortgage. —*Roberts v. Davis,* 59 N. W. 265 (Ia.); *Hall v. O'Connell,* 95 Pac. 718 (Ore.); Jones Mort. (4th ed.), secs. 331, 332; 27 Cyc. 579.

When the prime fact that a loan was made and a debt thereby created is in dispute and the evidence relating thereto is conflicting, then many attendant facts and circumstances are noticed and given weight as evidence for and against the prime fact. Such are to be found in the authorities cited by the defendant. Here, however, the prime fact is clear and undisputed and no recourse need be had to the attendant facts as in case of dispute.

The defendant contends that the plaintiffs should have alleged an offer or tender of the amount admitted to be due and secured by the alleged mortgage. There is some conflict in the authorities as to whether this must be done in a suit to redeem. Here, however, the complaint alleged and the answer admitted that the defendant was claiming the ownership and right to possession of the property, and was prosecuting an action in another court to oust plaintiffs from possession in which action these plaintiffs were debarred from having heard and determined matters, which, if proven, entitled them to possession. The action in the district court was commenced to have the true relation of the plaintiffs established and their possession of the property, to which they were entitled under

the allegations of their complaint, protected. Under the allegations of the complaint and the case made by them, they were entitled to the possession of the premises without paying or offering to pay the indebtedness, and could not be ousted from the possession until the mortgage had been foreclosed and a deed issued on the foreclosure sale. Certainly it was not necessary for them to offer to pay an indebtedness to protect a possession to which they were thus entitled without payment or offer to pay. It has been held that the rule applicable under some authorities in actions to redeem, that requires the plaintiff to tender the amount due or allege his ability and readiness to pay it, does not apply to a case which has for its object only the construction of a contract and the relation of the parties. —*Brown v. Follette,* 155 Ind. 316; *Tucker v. Witherbee,* 130 Ky. 269.

This must be especially true in a case like the present where the right of the plaintiffs to possession does not depend upon the payment of the debt or offer to pay.

Plaintiffs raise a question about the right of the court to award possession to the defendant. As has been seen, the action was not begun for the purpose of redeeming from the alleged mortgage, but to have the true relation of the parties determined in order to protect the possession of the plaintiffs, which it was alleged was menaced by the defendant. The plaintiffs prayed that Mrs. Reitze be adjudged the owner of and entitled to the possession of the premises and the defendant be adjudged a mortgagee and that he be enjoined from demanding or taking possession or prosecuting an action therefor. Under the allegations of the complaint, it was in equity, if at all, that the relation of the parties was that of mortgagor and mortgagee. The plaintiffs, therefore, were obliged to and did invoke the aid of equity to protect their possession. Having done so, they would not be heard to complain because the court awarded the possession to defendant when the issues tendered by them, one of which was their right to possession, were decided against them, provided of course that they were

properly so decided, and that the proper allegations were made and proofs submitted that would entitle the defendant to possession. The rights of the defendant arose out of the transaction detailed in the complaint. Before the court could protect or refuse to protect the possession of the plaintiffs it was necessary to determine the right to possession. The court certainly had the right to retain jurisdiction for the purpose of affording complete relief and thus end the litigation, under the maxim that, "where a court of equity has jurisdiction of a cause for any purpose it will retain it generally until complete justice is done."—*Packard v. King,* 3 Colo. 211; *Schilling v. Rominger,* 4 Colo. 100; *Danielson v. Gude,* 11 Colo. 87; *Coal Co. v. Coal Co.,* 24 Colo. 116.

However, the court erred in its finding of what the true relation of the parties was and that the defendant was entitled to possession. For that reason the judgment was wrong, and it is, therefore, reversed and the cause remanded for new trial.

*Reversed and Remanded.*

Mr. JUSTICE BAILEY and Mr. JUSTICE GARRIGUES concur.